In re Interest of Andrew S., a child under 18 years of age.
State of Nebraska, appellee and cross-appellee,
v. Stacey T., appellant, and Brian S.,
appellee and cross-appellant.

714 N.W.2d 762

Filed May 2, 2006.    No. A-05-1335.

Stephanie R. Hupp, of McHenry, Haszard, Hansen, Roth & Hupp, P.C., for appellant.

Gary E. Lacey, Lancaster County Attorney, and Rodney D. Reuter for appellee State of Nebraska.

Gene T. Oglesby, of Oglesby Law Offices, P.C., for appellee Brian S.

SIEVERS and CASSEL, Judges.

SIEVERS, Judge.

Stacey T. appeals, and Brian S. cross-appeals, the decision of the Lancaster County Separate Juvenile Court which adjudicated their minor child Andrew S. pursuant to Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2004).

## FACTUAL AND PROCEDURAL BACKGROUND

Stacey and Brian are the biological parents of Andrew, who was born July 19, 2005. Prior to Andrew's birth, Stacey and Brian relinquished their parental rights as to Aryssa S., born January 13, 2002, and Anna S., born January 12, 2003. At the time of those relinquishments, Stacey was pregnant with Andrew.

On July 20, 2005, the day after Andrew's birth, the State filed a "Petition and Praecipe" alleging that he was a child as defined by § 43-247(3)(a) because he lacked proper parental care by reason of the fault or habits of Stacey and Brian in that

[i]n prior juvenile court proceedings held in Lancaster County, Nebraska, [the juvenile court] found that Stacey . . . and Brian . . . had failed to provide proper parental care to their minor children due to the faults and/or habits of Stacey . . . and Brian . . . . Since that adjudication, Stacey . . . and Brian . . . failed to sufficiently participate in the court-ordered rehabilitation plan that was designed to correct, eliminate or ameliorate those conditions adjudicated by the court. Those conditions adjudicated by the court have not been corrected, eliminated, or ameliorated. This situation exposes [Andrew] to a risk of harm.

In an "Amended Petition and Praecipe," which appears to have been filed simultaneously with the "Petition and Praecipe," as it has the same date and time stamp, the State alleged that Andrew was a child as defined by § 43-247(3)(a) because he lacked proper parental care by reason of the fault or habits of Stacey and Brian in that

[i]n prior juvenile court proceedings held in Lancaster County, Nebraska, [the juvenile court] found that Brian . . . had failed to provide proper parental care to his minor children due to the faults and/or habits of Brian . . . and that those children were in situations dangerous to life or limb or injurious to the health or morals of said juveniles as it related to the parental care provided by Stacey . . . . Since that adjudication, Stacey . . . and Brian . . . failed to sufficiently participate in the court-ordered rehabilitation plan that was designed to correct, eliminate or ameliorate those conditions adjudicated by the court. Those conditions adjudicated by the court have not been corrected, eliminated,

or ameliorated. This situation exposes [Andrew] to a risk of harm.

Also on July 20, 2005, the State filed a "Motion for Temporary Custody" alleging that Andrew fell within the meaning of § 43-247(3)(a) and that he was "in such condition or surroundings that [his] welfare and best interest requires [sic] that [his] custody be immediately assumed by the Court." In support of its motion, the State attached the affidavit of Lisa Kreifels, the Nebraska Department of Health and Human Services (DHHS) care coordinator assigned to Andrew's case through DHHS' integrated care coordination unit.

In her affidavit, Kreifels stated that Stacey gave birth to Andrew on July 19, 2005. Kreifels also stated that Stacey and Brian had relinquished their parental rights as to the two other children, Aryssa and Anna—Brian on March 18, 2005, and Stacey on March 29. Kreifels stated that Aryssa was placed into the temporary custody of DHHS on December 19, 2002, and that Anna was placed into the temporary custody of DHHS on January 15, 2003.

Kreifels set forth the reasons for Aryssa's December 19, 2002, removal from the parental home, recounting the following matters adjudicated by the juvenile court: Aryssa was born on January 13, 2002; on or between that date and the following September 18, Stacey and Brian engaged in domestic assaults or domestic arguments on one or more occasions; during at least one such occasion, Aryssa was present; on September 3, Stacey was cited for assaulting Brian; during an incident on September 3, Stacey attempted to leave with 8-month-old Aryssa when the Lincoln Police Department was called; and Stacey allegedly assaulted an officer on September 3 by biting him on the hand and head-butting him. Kreifels noted that adjudication documentation concerning Aryssa stated that Stacey had been diagnosed with adjustment disorder, depression, personality disorder, disturbance of mood, and alcohol and marijuana abuse.

Kreifels stated that the adjudicated matters had not been corrected in order to allow the State to safely return Aryssa and Anna to their parents' care, despite reasonable efforts to assist the parents in correcting those matters. Kreifels averred that the conditions giving rise to a concern that Andrew was at risk of

harm were Stacey's untreated mental health issues and unresolved drug and alcohol issues, as well as the domestic violence issues between Stacey and Brian. Kreifels reiterated that Stacey and Brian had "failed to correct the original adjudication" and had not "complete[d] the court orders to gain custody" of Aryssa and Anna; she stated that both parents were to complete substance abuse treatment but had not done so and that Brian had refused to complete court-ordered urinary analyses. Kreifels stated that she believed Andrew's safety could not be ensured in the parental home—noting that the family had not followed safety plans in the past—and that thus, there was no effective safety plan which would allow Andrew to remain in the parental home.

In an order filed on July 20, 2005, the juvenile court granted immediate temporary custody of Andrew to DHHS because "Andrew would be at risk of harm if permitted to remain in the parent[s'] custody [due] to their failure to correct prior adjudicated matters." After a July 27 hearing on the merits, the court filed an order on August 2, finding that reasonable efforts had been made to return Andrew's legal custody to Stacey and Brian, that there was no evidence that the prior adjudicated matters had been corrected, and that it was not in Andrew's best interests to return him to the parental home. The court ordered that Andrew should remain in the temporary custody of DHHS for placement, treatment, and care; that Stacey and Brian should have reasonable rights of supervised visitation; and that the guardian ad litem assigned to Andrew's case should have access to Andrew and to all case information. The court also noted that the judge who presided over the July 27 hearing would recuse himself and that the matter would be reset for adjudication before a different judge.

An adjudication hearing was held on September 26, 2005. At this hearing, the State offered into evidence a complete transcript of the July 27 hearing held before the subsequently recused judge and a series of certified copies of documents (pleadings and orders) involving Aryssa and Anna, as well as Kreifels' July 20, 2005, affidavit in support of an order for temporary custody of Andrew. All exhibits were received into evidence without objection. The evidence from the July 27 hearing shows that Stacey

and Brian both testified that state services were terminated once they relinquished their parental rights as to the girls. Both Stacey and Brian also testified that since those relinquishments, there had been no new incidents of domestic violence. Brian testified that since the relinquishments, he had had trouble financing counseling services and drug and alcohol treatment. Stacey testified that she was not seeing a therapist at the time of the hearing, but was taking medication for depression. Kreifels testified at the July 27 hearing that it was her recommendation that the temporary custody order remain in effect, based upon the concerns set forth in her affidavit, and that it would be in Andrew's best interests for DHHS to maintain temporary custody. Kreifels acknowledged on cross-examination that the parents had not completed the rehabilitation program of the court, but that services had not been provided to the parents since they relinquished their rights as to Aryssa and Anna. Kreifels also acknowledged that since the time of the relinquishments, she had not been aware of any police contacts regarding Stacey, any episodes of domestic violence between Stacey and Brian, or any problems with alcohol or drug use by Stacey.

On September 30, 2005, the juvenile court filed its order stemming from the September 26 adjudication hearing, finding that the allegations of the amended petition were true by a preponderance of evidence. The juvenile court adjudged that Andrew was a child as defined by § 43-247(3)(a) because he lacked proper parental care and support by reason of the fault or habits of Stacey and Brian. The juvenile court also found, "Both parents have failed to correct all the conditions that place . . . Andrew . . . in a situation dangerous to life or limb or injurious to the health or morals of such juvenile." The court continued final disposition pending completion of a case plan and court report. It appears that at the time of the adjudication, Brian was living at a diagnostic and evaluation center and was awaiting sentencing on October 3 upon charges not specified in the record—but the suggestion was offered that the sentence could be 1 to 2 years' imprisonment.

Stacey timely appeals the order of the juvenile court, and Brian timely cross-appeals.

## ASSIGNMENTS OF ERROR

Both parents assert that the juvenile court erred (1) in taking jurisdiction over Andrew under § 43-247(3)(a); (2) in removing the custody of Andrew from his biological parents and placing his custody with DHHS; (3) because the original juvenile court judge ruled on emergency and temporary custody, then recused himself; and (4) in excluding from the evidence testimony regarding the terms of Stacey's and Brian's relinquishments of their parental rights as to Aryssa and Anna.

Stacey has filed a motion to withdraw her assignment of error No. 2 because Andrew has been returned to her physical custody during the pendency of this appeal, and we granted such motion. At oral argument, counsel for Brian withdrew Brian's assignment No. 2, stating that Brian was in a penitentiary and was therefore not in a position to have custody.

## JURISDICTION

Both parents' assignments of error Nos. 3 and 4 relate to the order, filed on August 2, 2005, that the temporary custody of Andrew would remain with DHHS, from which order neither Stacey nor Brian appealed.

Although an ex parte temporary detention order keeping a juvenile's custody from his or her parent for a short period of time is not final, an order under Neb. Rev. Stat. § 43-254 (Cum. Supp. 2000) and § 43-247(3)(a) after a hearing which continues to keep a juvenile's custody from the parent pending an adjudication hearing is final and thus appealable.

*In re Interest of Stephanie H. et al.*, 10 Neb. App. 908, 914, 639 N.W.2d 668, 675 (2002). The above quote describes the August 2 order precisely. An appellant has 30 days after the entry of a final order in which to file an appeal. See Neb. Rev. Stat. §§ 43-2,106.01(1) (Reissue 2004) (any final order or judgment entered by juvenile court may be appealed to Court of Appeals in same manner as appeal from district court to Court of Appeals) and 25-1912(1) (Cum. Supp. 2004) (notice of appeal shall be filed within 30 days after entry of final order of district court).

"An appellate court acquires no jurisdiction unless the appellant has satisfied the requirements for appellate jurisdiction,

including a notice of appeal filed within the prescribed time." *In re Interest of B.M.H.*, 233 Neb. 524, 527, 446 N.W.2d 222, 224 (1989). Because Stacey and Brian failed to timely appeal the order of August 2, 2005, which was clearly a final order, we have no jurisdiction with respect to their assignments of error Nos. 3 and 4, which relate solely to the August 2 order. Therefore, we do not address such assignments.

We do, however, have jurisdiction of errors asserted with respect to the September 30, 2005, order, as the appeal was perfected within 30 days of that order. Therefore, we will address whether the juvenile court erred in taking jurisdiction over Andrew under § 43-247(3)(a) based on the parents' failure to correct the conditions which caused their two other children to be adjudicated and removed from their parental care.

## STANDARD OF REVIEW

■ Juvenile cases are reviewed de novo on the record, and an appellate court is required to reach a conclusion independent of the juvenile court's findings. *In re Interest of Brian B. et al.*, 268 Neb. 870, 689 N.W.2d 184 (2004). When the evidence is in conflict, however, an appellate court may give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over the other. *Id.*

## ANALYSIS

The record reveals that Aryssa and Anna were adjudicated under § 43-247(3)(a) because of domestic assaults or domestic arguments occurring between Stacey and Brian during at least one of which Aryssa was present—Aryssa was adjudicated on November 19, 2002, and Anna was adjudicated on February 20, 2003. The juvenile court's orders in Aryssa's and Anna's cases required that Brian participate in a psychological evaluation as arranged by DHHS; Stacey and Brian participate in and successfully complete a parenting program as arranged by DHHS; Brian comply with a drug and alcohol evaluation; Brian comply with random drug testing as arranged and required by DHHS; Brian not consume drugs or alcohol, unless prescribed, prior to visitation; Stacey participate in ongoing psychiatric care and take any medications prescribed for her; Stacey participate in

programming to address substance abuse and alternatives to violence; Stacey participate in drug and alcohol treatment as recommended by her evaluation; and Stacey and Brian not engage in any domestic or physical altercations in the presence of Aryssa and Anna. The record indicates that after the girls' adjudications, Stacey was in a correctional facility for a period of time, given that some of her court-ordered corrective requirements were subject to the availability of such programs in the correctional facility during her incarceration. Stacey and Brian relinquished their parental rights as to the girls in March 2005 after Aryssa and Anna had been in DHHS' custody for 27 months and 26 months respectively—although the record reflects that Anna was temporarily returned to Stacey's custody for a few weeks in February and March 2003.

Kreifels' affidavit in support of an order for temporary custody of Andrew was admitted into evidence at Andrew's September 26, 2005, adjudication hearing, and we have previously detailed the contents of the affidavit. According to Kreifels, the conditions that gave rise to a concern that Andrew was at risk of harm were Stacey's untreated mental health issues and unresolved drug and alcohol issues, as well as the domestic violence issues between Stacey and Brian and the failure of Stacey and Brian to correct conditions leading to Aryssa's and Anna's adjudications in order to regain their custody. Kreifels averred that both parents were to complete substance abuse treatment but had not done so and that Brian had refused to complete court-ordered urinary analyses. Kreifels stated that she believed Andrew's safety could not be ensured in the parental home—noting that the family had not followed safety plans in the past—and that thus, there was no effective safety plan which would allow Andrew to remain in the parental home.

Therefore, the question is whether the juvenile court erred in taking jurisdiction over Andrew under § 43-247(3)(a) based on the parents' failure to correct the conditions which caused their two previous children to be removed from parental care. Section 43-247 states:

> The juvenile court in each county as herein provided shall have jurisdiction of:
>
> . . . .

(3) Any juvenile (a) . . . who lacks proper parental care by reason of the fault or habits of his or her parent, guardian, or custodian . . . or who is in a situation or engages in an occupation dangerous to life or limb or injurious to the health or morals of such juvenile . . . .

In *In re Interest of Dylan Z.*, 13 Neb. App. 586, 594, 697 N.W.2d 707, 716 (2005), this court said:

The rights of the parent and the child are protected separately by the adjudication and dispositional phases of juvenile proceedings. . . . Allegations in a petition brought under § 43-247(3)(a) are brought on behalf of the child, not to punish the parents. . . . The purpose of the adjudication phase is to protect the interests of the child . . . . The parents' rights are determined at the dispositional phase, not at the adjudication phase.

(Citations omitted.) And, "[a]t the adjudication stage, in order for a juvenile court to assume jurisdiction of minor children under § 43-247(3)(a), the State must prove the allegations of the petition by a preponderance of the evidence." *In re Interest of Heather R. et al.*, 269 Neb. 653, 663, 694 N.W.2d 659, 667 (2005).

The foremost purpose and objective of the Nebraska Juvenile Code is to promote and protect the juvenile's best interests. *In re Interest of D.D.P.*, 235 Neb. 864, 458 N.W.2d 193 (1990). Moreover, the juvenile code must be construed to ensure the rights of all juveniles to care and protection. *In re Interest of Lisa O.*, 248 Neb. 865, 540 N.W.2d 109 (1995). The parents' argument, when reduced to its essence, is that the relinquishments of their parental rights as to their two other children give them a "clean slate" with respect to Andrew. (Stacey's and Brian's briefs both read, "Currently, the logic behind a voluntary relinquishment, instead of proceeding to a contested hearing on the termination of parental rights, is the opportunity to have and protect the parental rights to afterborn children." Brief for appellant at 13 and brief for appellee Brian S. on cross-appeal at 13.) We believe that the adoption of this "clean slate" notion would ignore the larger purposes of the juvenile code, and it would produce an illogical result which could endanger Andrew. Clearly, the parents had plenty of "work" to do to regain custody of their two daughters,

but they chose to forgo such efforts and relinquished their parental rights as to those children. These facts do not bode well for Stacey's and Brian's stability and ability as parents, and they serve to convince us that this child, Andrew, is at risk. The fact that a parent has previously relinquished an adjudicated child is relevant evidence in an adjudication proceeding concerning a child born soon thereafter. In short, given the purpose of the juvenile code, one's history as a parent is a permanent record and may serve as a basis for adjudication depending on the circumstances. Relinquishments of parental rights are not any sort of "pardon," which is how Stacey and Brian would have us treat the relinquishments they made. They cite no authority on point for such notion, and while we have found none either, we suggest that one's history as a parent speaks to one's future as a parent. To ignore the fact that Stacey and Brian chose to relinquish their rights as to their first two children would be folly on our part and would unnecessarily expose Andrew to a risk of harm. Moreover, the time lag between those relinquishments and Andrew's birth was a mere 3 months, a fact which further convinces us that Kreifels correctly apprehends the danger to Andrew, as did the trial court. We find that grounds for the adjudication of Andrew were shown by the requisite standard of proof. Thus, we affirm.

## CONCLUSION

For the reasons stated above, we find that the juvenile court properly took jurisdiction over Andrew under § 43-247(3)(a).

AFFIRMED.

MOORE, Judge, participating on briefs.