782 N.W.2d 320 (2010)
279 Neb. 900
In re Interest of SIR MESSIAH T., also known as Sir Messiah M., et al., children under 18 years of age.
State of Nebraska, appellee,
v.
Yolanda A., appellant.
No. S-09-749.
Supreme Court of Nebraska.
May 21, 2010.
*323 Christine P. Costantakos, Omaha, for appellant.
Donald W. Kleine, Douglas County Attorney, and Amy Schuchman for appellee.
Thomas K. Harmon, of The Law Offices of Thomas K. Harmon, guardian ad litem.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
MILLER-LERMAN, J.

NATURE OF THE CASE
On June 30, 2009, the separate juvenile court of Douglas County terminated Yolanda A.'s parental rights to her four children, Sir Messiah T., also known as Sir Messiah M.; Mirage T., also known as Mirage M.; Carlieon T.; and Crystasia T., under Neb.Rev.Stat. § 43-292(2) and (6) (Reissue 2008). Section 43-292(2) generally provides for termination of parental rights when the parent has neglected and refused to give the necessary care to the juvenile or a sibling of the juvenile. Section 43-292(6) generally provides for termination of parental rights after a failure of efforts to preserve and reunify the family. Yolanda appeals.
Yolanda challenges the constitutionality of § 43-292(2). Yolanda also claims, inter alia, that, even if § 43-292(2) is constitutional, the State of Nebraska did not meet its burden of proof to establish the termination of her parental rights based on either § 43-292(2) or § 43-292(6) and further failed to establish that termination was in the best interests of the minor children. Because we conclude that § 43-292(2) is constitutional and that Yolanda's parental rights were properly terminated under this section, we affirm.

STATEMENT OF THE FACTS
On May 5, 2003, the separate juvenile court of Douglas County terminated Yolanda's parental rights to her three older children pursuant to § 43-292(2). The termination of parental rights as to these three children was based on neglect, not a relinquishment by Yolanda. Sir Messiah and Mirage, two of the children involved in this current case, had been born, but Yolanda's parental rights to these two children were not terminated in the 2003 proceeding.
*324 On September 9, 2007, the police arrested Yolanda for slashing the tires on a car belonging to a friend of her ex-boyfriend. After Yolanda's arrest, the police discovered that the four children involved in the current case had been left at home alone with a knife wedged in the door so they could not escape the home. The four children were all under the age of 9. The dates of birth of the children are Sir Messiah, born in July 1999; Mirage, born in December 2000; Crystasia, born in February 2005; and Carlieon, born in April 2006. After this incident, the children were removed from the home and placed in foster care. During the pendency of this case, the children have remained in foster care and Yolanda's contact with the children has been limited to supervised visitation.
On November 1, 2007, the children were adjudicated as being within the meaning of Neb.Rev.Stat. § 43-247(3)(a) (Cum. Supp. 2006). After that determination, the parties attended multiple court hearings. Various plans of rehabilitation with the intent to preserve and reunify the family were filed on: January 7, March 14, May 28, and August 27, 2008. After these reasonable efforts had been made, the State filed a motion to terminate Yolanda's parental rights to her four children based on § 43-292(2) and (6). The motion was filed on October 2 in the separate juvenile court of Douglas County.
The juvenile court held an evidentiary hearing on April 27, 2009. The evidence established that Yolanda had been through three chemical dependency programs since 2007 and has had five documented uses of alcohol since March 2008. Further, the evidence showed that it was likely that contrary to Yolanda's self-report, she had used alcohol as recently as January 2009, according to the testimony of the case manager of the Nebraska Department of Health and Human Services. The evidence shows that under the various rehabilitation plans, Yolanda was required to submit to random urinalysis but that Yolanda had missed many of these tests. According to the record, Yolanda was largely unavailable in person or on the telephone for the administration of these tests. Yolanda evidently "made up" these tests at a time of her choosing.
Yolanda's rehabilitation plans also required her to attend therapy, which she has attended with some regularity. However, it was shown that Yolanda withheld information from her therapist for approximately 6 months with respect to reporting a driving under the influence of alcohol charge that she experienced in May 2008. Yolanda's therapist testified that she would have expected her clients to be forthcoming sooner with this type of information.
Testimony at trial showed that two of Yolanda's minor children, Sir Messiah and Mirage, are high-needs children and that based on those needs, Sir Messiah has been placed in treatment-based foster care and Mirage has been placed in agency-based foster care. Sir Messiah has indicated to his therapist that he wishes to stay in his foster care placement, and Mirage stated to her therapist, in September and October 2008, that she "wants a new mom." Both children have been engaged in ongoing therapy and have made progress in dealing with their emotional and behavioral issues. Both children's therapists testified that during the course of their therapy, the children stated that Yolanda had physically abused them. Mirage's therapist further testified that Mirage indicated that Sir Messiah and Mirage had kissed and touched each other inappropriately at Yolanda's home.
There was testimony at trial that Yolanda had an ongoing relationship with Carl T., the father of Carlieon and Crystasia. *325 On February 13, 2009, Carl voluntarily relinquished his rights to these two children. Testimony at the hearing on Yolanda's termination of parental rights revealed that Carl engaged in domestic violence with Yolanda in the presence of the minor children and that the children have been negatively affected by these experiences. Yolanda's ongoing relationship with Carl allows him to enter the home and have telephone contact with the minor children.
Both Mirage's therapist and a specialist who worked with Sir Messiah testified at the hearing. Each testified that it was not in the children's best interests to be left in foster care long term. Furthermore, each testified that Sir Messiah and Mirage both needed specialized care and a structured, stable, and permanent home environment due to their special needs. Yolanda's case manager testified that in her view, termination was proper, because Yolanda was making limited progress in achieving the goals set for her. There was other testimony regarding all four children, not repeated here, all of which went to the needs and best interests of each child.
A family support worker who supervised Yolanda's visits with her children testified that Yolanda continued to struggle with parenting effectively and consistently for a 3-hour timespan. Further, there was testimony that in August 2008, during a supervised visit with her children, Yolanda was intoxicated and acted out to the extent that the police were called to intervene in the visit.
A witness was called on Yolanda's behalf. However, upon further examination, the witness acknowledged that Yolanda did not have the ability to handle the children and that it was unrealistic to believe that Yolanda could parent all four children at this time.
Based on this evidence, in an order filed June 30, 2009, the juvenile court found by clear and convincing evidence that the children were within the meaning of § 43-292(2) and (6) and that it was in their best interests that Yolanda's parental rights be terminated. Yolanda appeals.

ASSIGNMENTS OF ERROR
Yolanda assigns numerous errors. Yolanda claims, restated and summarized, that the juvenile court erred (1) in overruling her motion for judgment on the pleadings in which she challenged the constitutionality of § 43-292(2); (2) in terminating her parental rights under § 43-292(2), because the State's evidence failed to clearly and convincingly establish the existence of this statutory ground; and (3) in finding that the evidence clearly and convincingly established that termination of Yolanda's parental rights is in the best interests of the minor children. Because our resolution of these assignments of error resolves the case, we do not recite or reach Yolanda's remaining assignments of error.

STANDARDS OF REVIEW
Whether a statute is constitutional is a question of law; accordingly, the Nebraska Supreme Court is obligated to reach a conclusion independent of the decision reached by the trial court. Garey v. Nebraska Dept. of Nat. Resources, 277 Neb. 149, 759 N.W.2d 919 (2009).
Juvenile cases are reviewed de novo on the record, and an appellate court is required to reach a conclusion independent of the juvenile court's findings. In re Interest of Hope L. et al., 278 Neb. 869, 775 N.W.2d 384 (2009). However, when the evidence is in conflict, an appellate court may consider and give weight to the fact that the trial court observed the witnesses *326 and accepted one version of the facts over the other. Id.

ANALYSIS

Section 43-292(2) Does Not Violate Yolanda's Constitutional Right to Due Process.
Yolanda makes numerous arguments challenging the constitutionality of § 43-292(2) all to the effect that § 43-292(2) denies her procedural due process. Yolanda raised her constitutional objection to § 43-292(2) prior to the termination hearing in a motion for judgment on the pleadings. The court rejected her claim. As Yolanda reads § 43-292(2), prior neglect of a sibling without more can result in termination of parental rights in the present case. Under Yolanda's reading of § 43-292(2), she is denied procedural due process because she is denied an opportunity to present evidence of current circumstances. We determine that Yolanda misreads § 43-292(2) and conclude that § 43-292(2) is not unconstitutional. Thus, the juvenile court did not err in its ruling.
Section 43-292 states:
The court may terminate all parental rights between the parents or the mother of a juvenile born out of wedlock and such juvenile when the court finds such action to be in the best interests of the juvenile and it appears by the evidence that one or more of the following conditions exist:
. . . .
(2) The parents have substantially and continuously or repeatedly neglected and refused to give the juvenile or a sibling of the juvenile necessary parental care and protection.
Yolanda's overall claim is that § 43-292(2) of the parental rights termination statutes is unconstitutional because it allows the State to terminate parental rights based solely upon a finding that a parent has previously neglected and refused to care for a sibling. We logically read "sibling" to include a child of the parent under review, regardless of whether the parental rights to that sibling have been terminated. Yolanda claims that if her reading is correct, § 43-292(2) violates her rights under the Due Process Clause of the 14th Amendment to the U.S. Constitution, because it fails to afford her an opportunity to present evidence showing that her current circumstances do not warrant termination. Yolanda misreads § 43-292(2), and we reject her argument.
Yolanda correctly asserts that she is entitled to procedural due process in connection with these termination of parental rights proceedings. In the context of both adjudication and termination hearings, this court has stated that
"`[p]rocedural due process includes notice to the person whose right is affected by the proceeding; reasonable opportunity to refute or defend against the charge or accusation; reasonable opportunity to confront and cross-examine adverse witnesses and present evidence on the charge or accusation; representation by counsel, when such representation is required by the Constitution or statutes; and a hearing before an impartial decisionmaker.'"
In re Interest of Mainor T. & Estela T., 267 Neb. 232, 247-48, 674 N.W.2d 442, 457 (2004).
In Nebraska statutes, the bases for termination of parental rights are codified in § 43-292. Section 43-292 (Supp.2009) currently provides 11 separate conditions, any one of which can serve as the basis for the termination of parental rights when coupled with evidence that termination is in the best interests of the child. Section *327 43-292, which is applicable to each of the 11 bases, states:
The court may terminate all parental rights between the parents or the mother of a juvenile born out of wedlock and such juvenile when the court finds such action to be in the best interests of the juvenile and it appears by the evidence that one or more of the following conditions exist[.]
Basis number two, § 43-292(2), is at issue in this assignment of error and states that termination is authorized where "[t]he parents have substantially and continuously or repeatedly neglected and refused to give the juvenile or a sibling of the juvenile necessary parental care and protection."
By its terms, § 43-292 requires a showing of best interests plus 1 of the 11 statutory bases for termination. See In re Interest of Walter W., 274 Neb. 859, 744 N.W.2d 55 (2008). Section 43-292(2) involves the neglect of the child or a sibling of the child at issue. Unlike the reading urged by Yolanda, § 43-292(2) does not dictate that whenever a parent has neglected a sibling in the past, parental rights to any future children will automatically be terminated without giving the parent an opportunity to present evidence of current circumstances. Instead, the statute as a whole states that prior neglect can be a basis for termination only in conjunction with proof by the State which establishes that termination is in the best interests of the minor children involved in the current proceedings. Indeed, as we have emphasized, and we take this opportunity to repeat, a juvenile's best interests are a primary consideration in determining whether parental rights should be terminated as authorized by the Nebraska Juvenile Code. In re Interest of DeWayne G., 263 Neb. 43, 638 N.W.2d 510 (2002). In deciding best interests, the court is obligated to review the evidence presented by all parties relative to the parent's current circumstances and determine if termination is in the best interests of the minor children based on those circumstances.
For completeness, we note that at trial and on appeal, Yolanda has suggested what may be characterized as a substantive due process claim. Yolanda effectively claims that the neglect of a sibling as provided for in § 43-292(2) is not a proper fact for consideration in the current proceeding as it bears on her fitness and that such consideration automatically results in termination and prevents her from receiving due process. Yolanda suggests that due to the termination of parental rights as to her three older children, she should be given a "clean slate" with respect to the four juveniles now under consideration, and that prior neglect should be ignored. The intermediate appellate court of this state rejected a similar argument in In re Interest of Andrew S., 14 Neb.App. 739, 714 N.W.2d 762 (2006), and we reject it in the instant case.
In In re Interest of Andrew S., the Nebraska Court of Appeals considered prior relinquishments as they related to the adjudication then at issue. The Court of Appeals stated that the previous relinquishments
do not bode well for [the parents'] stability and ability as parents, and they serve to convince us that [the current juvenile] is at risk. The fact that a parent has previously relinquished an adjudicated child is relevant evidence in an adjudication proceeding concerning a child born soon thereafter. In short, given the purpose of the juvenile code, one's history as a parent is a permanent record and may serve as a basis for adjudication depending on the circumstances. Relinquishments of parental rights are not any sort of "pardon," which is how [the parents] would have us treat the *328 relinquishments they made. They cite no authority on point for such notion, and while we have found none either, we suggest that one's history as a parent speaks to one's future as a parent.
Id. at 749, 714 N.W.2d at 769-70.
Courts in other jurisdictions have similarly reasoned in related contexts. In State ex rel. Children, Youth v. Amy B., 133 N.M. 136, 141, 61 P.3d 845, 850 (N.M.App.2002), the court in a juvenile matter reviewed the jurisprudence in this area and stated that "in most of the reported cases, there is a very real relationship between the past conduct and the current abilities." In a juvenile case considering the prospects of future success as a parent, the California Court of Appeals stated, "Experience has shown that with certain parents ... the risk of recidivism is a very real concern. Therefore, when another child of that same parent is adjudged a dependent child, it is not unreasonable to assume [that future parenting] efforts will be unsuccessful." In re Baby Boy H., 63 Cal.App.4th 470, 478, 73 Cal. Rptr.2d 793, 799 (1998). We agree with this reasoning which recognizes that one's history as a parent speaks to one's future as a parent and reject Yolanda's suggestion that past parenting outcomes should be ignored. Along with other courts, we believe that neglect of a prior sibling is relevant to the current inquiry and that past neglect, along with facts relating to current family circumstances which go to best interests, are all properly considered in a parental termination case under § 43-292(2).
Focusing on the procedural due process Yolanda was accorded herein, the record shows that Yolanda was adequately notified in the "Motion for Termination of Parental Rights and Notice of Hearing" that the State sought to terminate her parental rights to the four children in question on the basis, inter alia, of § 43-292(2) and that the factual basis alleged under § 43-292(2) was prior neglect, i.e., the involuntary termination of parental rights for the neglect of three siblings. Pursuant to the statute, Yolanda was accorded a full evidentiary hearing, at which hearing she was represented by counsel and had the opportunity to present evidence and cross-examine the witnesses, and the State was required to present clear and convincing evidence of neglect of prior siblings and current best interests. The earlier termination of parental rights to the three siblings for neglect was readily established. With respect to best interests, the evidence showed the needs of the four children involved. The evidence also showed that Yolanda was offered numerous reunification plans, and there was ample current evidence that she was not successful in rehabilitation and reunification. This evidence went to present circumstances.
As the Supreme Court of Montana noted in a similar context under a statute with comparable features, "[t]he statutes... do not limit the decision to the facts of the prior [neglect]. The district court also considers any available evidence relating to present family circumstances and the specific child at issue." In re Custody and Parental Rights of A.P., 340 Mont. 39, 46, 172 P.3d 105, 109 (2007). Like the Montana statute, Nebraska's § 43-292(2) requires proof of both best interests and neglect of either the child at issue or a sibling. Unlike Yolanda's reading of § 43-292(2), termination of parental rights under this section is not based exclusively on neglect of another sibling. Proof of best interests is also required. The State proffered evidence of both, and Yolanda presented evidence on her own behalf. Given the terms of the statute and the scope and safeguards of the evidentiary hearing *329 which were accorded Yolanda, we reject Yolanda's constitutional challenge to § 43-292(2).

The State Provided Sufficient Evidence to Warrant Termination Under § 43-292(2).
Yolanda also claims that the State failed to prove by clear and convincing evidence that termination of her parental rights was appropriate under § 43-292(2). We consider this juvenile appeal de novo on the record. In re Interest of Hope L. et al., 278 Neb. 869, 775 N.W.2d 384 (2009). Because we conclude that the evidence is sufficient, we reject this assignment of error.
In order to terminate an individual's parental rights, the State must prove by clear and convincing evidence that one of the statutory grounds enumerated in § 43-292 exists and that termination is in the children's best interests. In re Interest of Walter W., 274 Neb. 859, 744 N.W.2d 55 (2008). The State sought to terminate Yolanda's parental rights under § 43-292(2). At trial, the State showed without contradiction that Yolanda's parental rights to her three older children were terminated by reason of neglect. With respect to the children currently under consideration, the State also presented sufficient evidence of their neglect recited above, included, but not limited to, the physical abuse reported by the children, their exposure to the domestic turmoil occasioned by Yolanda's continued relationship with Carl, and Yolanda's inability to care and provide for her children. Because the State met its burden with respect to neglect, we turn to whether the State established by clear and convincing evidence that termination was in the best interests of the minor children.
The evidence related to best interests of the children was voluminous and was largely derived from the history associated with the various rehabilitative and reunification services which had been accorded to Yolanda and her children. The record shows that the four children have remained in foster care with only limited supervised visitation with Yolanda since September 9, 2007. The needs of the children were described at length, and the testimony showed that Yolanda cannot meet her children's needs. Each of the service providers involved with the family agreed that Yolanda is unable to parent all four of these children on a regular basis, particularly given the special needs required to care for Sir Messiah and Mirage.
The record also shows that Yolanda has had a long history of alcohol abuse and has continued to struggle with abstaining from alcohol use throughout the attempted reunification process. Yolanda was cited for driving under the influence of alcohol in May 2008, which she did not report to her therapist. According to the record, Yolanda was drinking at one of her visitations with her children and had to be removed from the visit by law enforcement. Indeed, although Yolanda has submitted to random urinalysis tests, she has been absent for many of these tests. The tests have been rescheduled at her convenience, effectively eliminating the random nature of the alcohol testing.
While we agree with the juvenile court that the record shows that Yolanda has made recent progress in achieving the goals set forth in the rehabilitation plans, these efforts have largely come after the State filed the petition to terminate her parental rights. Even taking these efforts into account, Yolanda has been unable to keep a job, abstain from alcohol, or successfully parent her children unsupervised. We must agree with the testimony of the service providers involved with this family that indefinite foster care is not advisable for these children. Based on the record, the State established by clear and convincing *330 evidence that it is in the best interests of the four minor children that Yolanda's parental rights be terminated. Given the evidence, we reject Yolanda's assignment of error in which she claimed that the evidence was insufficient to terminate her parental rights under § 43-292(2).

CONCLUSION
We reject Yolanda's constitutional challenge to § 43-292(2) and conclude that the evidence was sufficient to terminate Yolanda's parental rights to the four children at issue under § 43-292(2). We therefore affirm the order of the juvenile court terminating the parental rights of Yolanda to the four children in this case.
AFFIRMED.