IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

IN RE INTEREST OF TRIP B.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE INTEREST OF TRIP B., A CHILD UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLEE,

V.

KRISTOPHER B., APPELLANT.

Filed May 16, 2017.    No. A-16-903.

Appeal from the Separate Juvenile Court of Douglas County: WADIE THOMAS, Judge. Affirmed.

William R. Harris for appellant.

Donald W. Kleine, Douglas County Attorney, and Jennifer C. Clark for appellee.

INBODY, RIEDMANN, and ARTERBURN, Judges.

INBODY, Judge.

### INTRODUCTION

Kristopher B., biological father of Trip B., appeals the order of the Douglas County Separate Juvenile Court terminating his parental rights. For the reasons set forth herein, we affirm.

### STATEMENT OF FACTS

On June 13, 2014, the State filed a supplemental petition alleging Trip came within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Supp. 2013), in that he lacked proper parental care by reason of Kristopher being incarcerated due to methamphetamine possession, Kristopher's use of alcohol and controlled substances, and Kristopher's inability to provide proper parental care. The State also filed an ex parte motion for temporary custody of Trip to be placed with the Department

- 1 -

of Health and Human Services (DHHS). The same day, the court ordered placement of Trip to be placed with DHHS and to exclude the home of Kristopher. Kristopher later admitted to being incarcerated due to possession of methamphetamine, being unable to provide proper parental care, and that Trip was at risk for harm.

On September 18, 2014, the court determined Trip was within the meaning of § 43-247(3)(a) and that it was in Trip's best interests to remain in the temporary care of DHHS. The court ordered Kristopher to have supervised visitation with Trip, to undergo a chemical dependency evaluation, to maintain safe and adequate housing and a legal source of income, to not use drugs and alcohol, and to submit to random urinalysis testing.

On February 8, 2016, the State filed a second motion for termination of Kristopher's parental rights pursuant to Neb. Rev. Stat. § 43-292(2), (6), and (7) (Reissue 2016), and alleging that termination was in Trip's best interests. The trial on the motion for termination of Kristopher's parental rights was held on August 31.

Kylie Schmitz, who worked as a family permanency specialist for Kristopher from September 2015 to July 2016, testified at trial. Schmitz testified that Trip was in foster care beginning in June 2014, and remained in foster care the entire time she had the case. Schmitz stated Trip was initially removed in June 2014 because of concerns for Trip being left alone in the care of a known drug user, Trip not receiving adequate nutrition, and drug use. When Schmitz took over the case, Kristopher was ordered to participate in substance abuse treatment, comply with urinalysis, supervised visitation, obtain safe and adequate housing, and obtain and maintain a legal source of income.

As of September 2015, Kristopher had worked with two substance abuse treatment programs, but had been unsuccessfully discharged from both. In October or November 2015, Schmitz met with Kristopher regarding the court-ordered participation in a substance abuse treatment program and, afterward, provided him with a list of providers for Kristopher to call and set up an evaluation. Kristopher failed to attend two evaluations. However, in May 2016, Kristopher informed Schmitz he had a chemical dependency evaluation set up and Schmitz assisted in assuring a payment source was available for Kristopher. Schmitz received a verification that Kristopher completed the evaluation. Following the evaluation, Schmitz met with Kristopher about the recommendations from the evaluation, which recommendations included Kristopher attending outpatient treatment. Schmitz went over some service providers for Kristopher to attend outpatient treatment and Kristopher stated he was going to contact the service providers given to him by Schmitz. In May 2016, Kristopher began outpatient treatment with Heartland.

While Schmitz was the case worker, Kristopher was not consistent with urinalysis testing, as he frequently missed tests, requested to redo a missed test about three times, and there were concerns of diluted tests. In November 2015, Kristopher informed Schmitz he was living in an apartment, but when Schmitz volunteered to do a walkthrough, Kristopher informed her that the landlord did not allow children there because of sex offenders living in the vicinity. However, in March 2016, and again in April, Kristopher moved and Schmitz was able to do a walkthrough of the residences and determined they were appropriate residences.

In November 2015, Kristopher informed Schmitz he was working construction, but not on a payroll and was receiving pay under the table. However, in April or May 2016, Kristopher told

Schmitz he was working for Aardvark Moving. Kristopher provided Schmitz a business card to contact Aardvark Moving, but Schmitz was never able to speak to anyone to verify employment. Throughout the entirety of Schmitz's responsibility as case manager, Kristopher had supervised visitation with Trip twice per week. However, Kristopher would sporadically miss visits with Trip. Schmitz scheduled a family team meeting every month she had the case and Kristopher attended three of the eight or nine meetings he should have attended.

At trial, Schmitz opined her belief that Kristopher had not made progress to alleviate the initial concerns of why Trip was initially removed from the home because of multiple positive urinalysis for methamphetamine, noncompliance with treatment, and concerns documented in visitation reports. Schmitz stated that in January 2016, Kristopher informed her of his methamphetamine use. Schmitz also stated that Kristopher tested positive for methamphetamine in March and for alcohol in June. Schmitz stated her belief that Kristopher had not made any progress to reunify with Trip. Schmitz recommended that Kristopher's parental rights should be terminated because of the "lack of progress in alleviating the original threat that resulted in removal, as well as the lack of progress in complying with the case plan goals and court orders," in addition to the lack of income verification and the inability for Kristopher to house Trip with him. Schmitz believed it was in Trip's best interests for the termination of Kristopher's parental rights because she did not believe Trip would be physically or emotionally safe if returned to the home.

Crystal Hins, who worked as a family permanency specialist for Kristopher from July 2016 to the date of trial, also testified. Hins met with Kristopher initially when she first took over the case, but indicated she was not able to meet with him since she saw him in court in August 2016. Hins stated she called Kristopher once a week in August, but was not able to contact him. Hins testified Kristopher contacted her multiple times through text messaging, regarding help with housing and to reschedule missed urinalysis tests. Kristopher also told Hins that he was staying at Motel 89; however, when Hins contacted Motel 89, she was told there was no room under Kristopher's name. Hins stated she is providing visitation and urinalysis, but has been unable to confirm whether Kristopher is in any treatment or receive confirmation of his employment.

Following the hearing, the court determined that the State established that Trip was within the meaning of § 43-292(2), (6), and (7) by clear and convincing evidence and that it was in Trip's best interests that Kristopher's parental rights be terminated. Consequently, the court ordered that Kristopher's parental rights to Trip be terminated. Kristopher has timely appealed to this court.

ASSIGNMENTS OF ERROR

Kristopher's brief does not contain a separate section for assignments of error and does not set forth separately numbered assignments of error as required by Neb. Ct. R. App. P. § 2-109(D)(1) (rev. 2014). Rather, his brief includes a statement in the nature of the case section and headings for each of the arguments indicating what the district court "incorrectly found" regarding Trip being within the meaning of § 43-292(2), (6), and (7), and in finding that terminating Kristopher's parental rights were in Trip's best interests.

The Nebraska Supreme Court has repeatedly emphasized that Neb. Ct. R. App. P. § 2-109(D)(1) requires a party to set forth assignments of error in a separate section of the brief,

with an appropriate heading, following the statement of the case and preceding the propositions of law, and to include in the assignment of errors section a separate and concise statement of each error the party contends was made by the trial court. See, *In re Interest of Samantha L. & Jasmine L.*, 286 Neb. 778, 839 N.W.2d 265 (2013); *In re Interest of Jamyia M.*, 281 Neb. 964, 800 N.W.2d 259 (2011). The Court has also emphasized that "headings in the argument section of a brief do not satisfy the requirements of Neb. Ct. R. App. P. § 2-109(D)(1)." *In re Interest of Samantha L. & Jasmine L.*, 286 Neb. at 783, 839 N.W.2d at 269-70. See, also, *In re Interest of Jamyia M.*, *supra*.

When the brief of a party fails to comply with the mandate of Neb. Ct. R. App. P. § 2-109(D)(1)(e), we may proceed as though the party failed to file a brief, or alternatively, may examine the proceedings for plain error. *In re Interest of Samantha L. & Jasmine L.*, *supra*. Thus, we proceed to examine this appeal for plain error. Plain error is error plainly evident from the record and of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process. *Id*.

## ANALYSIS

### TERMINATION PURSUANT TO STATUTORY GROUNDS

The district court found that the State proved, by clear and convincing evidence, that termination of Kristopher's parental rights pursuant to § 43-292(2), (6), and (7), was in Trip's best interests. Section 43-292 provides, in pertinent part:

> The court may terminate all parental rights between the parents or the mother of a juvenile born out of wedlock and such juvenile when the court finds such action to be in the best interests of the juvenile and it appears by the evidence that one or more of the following conditions exist:
>
> . . . .
>
> (2) The parents have substantially and continuously or repeatedly neglected and refused to give the juvenile or a sibling of the juvenile necessary parental care and protection;
>
> . . . .
>
> (6) Following a determination that the juvenile is one as described in subdivision (3)(a) of section 43-247, reasonable efforts to preserve and reunify the family if required under section 43-283.01, under the direction of the court, have failed to correct the conditions leading to the determination;
>
> (7) The juvenile has been in an out-of-home placement for fifteen or more months of the most recent twenty-two months[.]

The record indicates that Trip was placed in foster care and in the temporary custody of DHHS pursuant to a court order on June 13, 2014, and that Trip had been in an out-of-home placement between that date and the February 8, 2016, filing of the second motion to terminate parental rights. As of the filing of the second motion to terminate Kristopher's parental rights, Trip had been in out-of-home placement for at least 19 consecutive months. By the time the termination

hearing was held on August 31, 2016, Trip had been placed out of Kristopher's home for at least 26 months.

The State proved the out-of-home placement for 15 or more months of the most recent 22 months by clear and convincing evidence. If an appellate court determines the lower court correctly found that termination of parental rights is appropriate under one of the statutory grounds set forth in § 43-292, the appellate court need not further address the sufficiency of the evidence to support termination under any other statutory ground. *In re Interest of Jagger L.,* 270 Neb. 828, 708 N.W.2d 802 (2006).

Therefore, we need not further address the sufficiency of the evidence to support termination under either § 43-292(2) or (6), although we note the evidence offered by the State to prove these statutory grounds will be relevant in considering whether terminating Kristopher's parental rights is in Trip's best interests.

BEST INTERESTS

Next, we consider whether termination of Kristopher's parental rights is in Trip's best interests.

A child's best interests are presumed to be served by having a relationship with his or her parent. *In re Interest of Isabel P. et al.*, 293 Neb. 62, 875 N.W.2d 848 (2016). This presumption is overcome only when the State has proved that the parent is unfit. *Id*. In the context of the constitutionally protected relationship between a parent and a child, parental unfitness means a personal deficiency or incapacity which has prevented, or will probably prevent, performance of a reasonable parental obligation in child rearing and which has caused, or probably will result in, detriment to a child's well-being. *Id*. The best interests analysis and the parental fitness analysis are fact-intensive inquiries. *Id*. And while both are separate inquiries, each examines essentially the same underlying facts as the other. *Id*.

It is well established that a juvenile's best interests are a primary consideration in determining whether parental rights should be terminated as authorized by the Nebraska Juvenile Code. *In re Interest of Aaron D.*, 269 Neb. 249, 691 N.W.2d 164 (2005); *In re Interest of Eden K. & Allison L.*, 14 Neb. App. 867, 717 N.W.2d 507 (2006). In deciding best interests, the court is obligated to review the evidence presented by all parties relative to the parent's current circumstances and determine if termination is in the best interests of the children based on those circumstances. *In re Interest of Sir Messiah T. et al.*, 279 Neb. 900, 782 N.W.2d 320 (2010). A parent's interest in the accuracy and justice of the decision to terminate his or her parental rights is a commanding one. *In re Interest of Aaron D., supra*; *In re Interest of Eden K. & Allison L., supra.* Before parental rights may be terminated, the evidence must clearly and convincingly establish the existence of one or more of the statutory grounds permitting termination and that termination is in the juvenile's best interests. *In re Interest of Aaron D., supra*; *In re Interest of Eden K. & Allison L., supra*.

In this instance, the evidence showed that Kristopher had been unsuccessfully discharged from two substance abuse treatment programs, was inconsistent with urinalysis testing, tested positive for use of methamphetamine, alcohol, and marijuana, and admitted to using methamphetamine. Moreover, Kristopher could not provide proof of his employment and was

unable to progress beyond supervised visitation with Trip. Based on Schmitz's testimony, it appears Kristopher made little progress in alleviating the initial concerns causing the need for Trip to be placed outside the home, particularly with noncompliance or nonattendance with urinalysis, supervised visits, or family team meetings. Kristopher's behaviors indicate an inability to provide sustained structure, stability, and restraint. Trip has been in out-of-home placement for at least 19 consecutive months, and Kristopher has failed to correct the conditions leading to the determination that Trip lacked proper parental care by reason of Kristopher's faults or habits. It is apparent that Kristopher is no closer to being in a position to parent Trip than he was at the time of the Trip's removal. Trip cannot, and should not, be suspended in foster care or be made to await uncertain parental maturity. See *In re Interest of Eden K. & Allison L., supra*.

In sum, we conclude the evidence establishes that Kristopher is unfit in that he displays personal deficiencies or incapacities which have prevented him from parenting his child and which have caused detriment to his child's well-being. We conclude the juvenile court did not commit plain error in finding there was clear and convincing evidence that termination of Kristopher's parental rights was in Trip's best interests.

## CONCLUSION

For the foregoing reasons, we affirm the juvenile court's order terminating Kristopher's parental rights to Trip.

AFFIRMED.