IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


IN RE INTEREST OF JOEZIA P. & JOESIVE P.


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


IN RE INTEREST OF JOEZIA P. AND JOESIVE P.,
CHILDREN UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLEE,

V.

JACARA P., APPELLANT.


Filed January 19, 2021.    No. A-20-468.


Appeal from the Separate Juvenile Court of Lancaster County: ROGER J. HEIDEMAN, Judge. Affirmed.

Joy Shiffermiller, of Shiffermiller Law Office, P.C., L.L.O., for appellant.

Patrick F. Condon, Lancaster County Attorney, and Maureen E. Lamski for appellee.


PIRTLE, Chief Judge, and MOORE and ARTERBURN, Judges.

PIRTLE, Chief Judge.

### INTRODUCTION

Jacara P. appeals from the order of the Separate Juvenile Court of Lancaster County which adjudicated her son, Joesive P., to be a child within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2016). For the reasons that follow, we affirm the juvenile court's order.

### BACKGROUND

Jacara is the mother of Joezia P., born in August 2017, and Joesive, born in April 2020. After filing her appeal in this case, Jacara voluntarily relinquished her parental rights to Joezia, and we discuss him only to provide context. Neither Joezia's nor Joesive's fathers are involved in this appeal.

- 1 -

On April 3, 2020, the State filed a petition alleging that Joesive was a juvenile within the meaning of § 43-247(3)(a). The petition alleged that Jacara's parental rights to her older children had been involuntarily terminated in 2014; that Joesive's older half-brother, Joezia, had been adjudicated as a juvenile within the meaning of § 43-247(3)(a) and had not been returned to Jacara's care; that Jacara had a long history of substance abuse and was in need of residential treatment prior to being able to safely take care of an infant; and that Jacara's actions put Joesive at a risk of harm.

A hearing on the State's petition was held on June 16 and 23, 2020.

The State first presented the testimony of Julie Ernst, a child and family services specialist with the Nebraska Department of Health and Human Services (the Department). Ernst testified that she had been assigned to Jacara's case in March 2019. At that time, Joesive had not yet been born, but the State had filed a petition alleging that Joezia was a child within the meaning of § 43-247(3)(a). Ernst attempted to help Jacara complete a co-occurring substance abuse and mental health evaluation, which she testified Jacara did not complete. Ernst testified that the Department had concerns about Jacara's substance abuse, her ability to maintain a safe and stable home, to maintain steady income, and about her willingness to complete and follow up with the substance abuse evaluation.

In September 2019, Jacara received a sentence of 365 days' jail time following a conviction for attempted possession of a controlled substance. Ernst testified that it was only after she was incarcerated that Jacara completed the co-occurring evaluation. The evaluation recommended that Jacara participate in long-term residential treatment to address her substance abuse issues. Ernst testified that during her incarceration, Jacara participated in individual therapy and medication management. Jacara was unable to complete other tasks ordered by the Department, such as participating in long-term residential treatment, attending domestic violence programming, completing a Child Dyadic Assessment, and maintaining a legal means of income and stable housing. Ernst testified that in March 2020, she was removed from Jacara's case. At the time Ernst was taken off of the case, Jacara had not yet completed the rehabilitative plan created by the Department.

On cross-examination, Ernst agreed that Jacara had completed programming during her incarceration, including a job readiness life skills class and a trauma healing class. Ernst admitted that at the time she was first assigned to the case, Joezia was still living with Jacara. She testified that Joezia was only placed in the Department's custody in September 2019, due to Jacara's incarceration. Ernst admitted that during the months Joezia was living with Jacara, she did not see evidence that Jacara was abusing substances. However, Ernst stated that she later learned Jacara had not been truthful with her and that Jacara had, in fact, used methamphetamine while Joezia was in her care and while she was pregnant with Joesive.

Karissa Dunkin, a child a family services specialist with the Department, testified. Dunkin was assigned as Jacara's caseworker after Ernst left the case. She testified that when she first met Jacara, she was still incarcerated, and that Joesive had not yet been born. Dunkin testified that Joesive was born in April 2020, 3 days after Jacara was released from jail. At the time of the hearing, the Department had not set up services for Jacara and Joesive, but Dunkin testified that she recommended Jacara comply with regular drug testing. Dunkin testified that to her knowledge, Jacara had not completed any drug testing since her release from jail. She testified that she did not

have any reports proving or disproving that Jacara had used controlled substances since her jail intake in September 2019. On cross-examination, Dunkin admitted that Joesive had tested negative for controlled substances at birth.

Nicole Lemke, a child and family services specialist with the Department, testified at the hearing. Lemke testified that she was a supervisor with the Lancaster County Family Treatment Drug Court Program, which took on cases where substance abuse was the sole or primary reason for adjudication. Lemke testified that although this case began in 2017, Jacara did not cooperate with the Department until she was incarcerated in 2019.

Lemke testified that even after a parent successfully completes a substance abuse treatment program, there is a concern that the parent might relapse. She testified that if a parent abuses substances, there are risks to any children who live in the home. She testified that there were risks because people who abuse substances often associate with other drug users, which could lead to a high volume of traffic in and out of the home. She testified there was also a risk that controlled substances might be present in the home. Lemke testified that a parent who abuses substances may be erratic and short tempered, may sleep for long periods of time, and may not be able to tend to the needs of a child. She further testified that homelessness is often a factor in cases where a parent abuses substances.

On cross-examination, Lemke admitted that both Joesive and Jacara had tested negative for controlled substances at the time of Joesive's birth. She agreed that after her release from jail, Jacara had completed short-term residential treatment for substance abuse, and that at the time of the hearing, Jacara was enrolled in long-term residential treatment. Lemke testified that the treatment facility permitted minor children to live with their mothers on a case-by-case basis.

The State next called Sarah Worley, a licensed drug and alcohol counselor, to testify. Worley completed a mental health and substance abuse evaluation of Jacara in October 2019. Worley testified that Jacara last used methamphetamine the day before she was incarcerated. At the time of the evaluation, Jacara was 16 weeks pregnant with Joesive. Jacara told Worley that she had been unaware she was pregnant until she arrived at the jail. Ultimately, Worley recommended that Jacara complete long-term residential treatment. Worley's recommendation was based on the fact that Jacara had unsuccessfully attempted short-term residential treatment in 2017 and because Jacara had continued to use methamphetamine up until the date of her incarceration. Worley testified that even if Jacara could successfully complete long-term residential treatment, she would still recommend that the Department monitor Jacara via drug testing in order to ensure sobriety. Worley testified that the risks associated with parenting a child while using methamphetamine included erratic and impulsive behaviors which could place a child in danger.

After the conclusion of Worley's testimony, the State rested its presentation of evidence.

Jacara testified that her parental rights to her older children had been terminated in 2014, at which time she had been in prison. Jacara testified that she had come to the Department's attention again in 2017 because Joezia had tested positive for controlled substances at birth. Jacara denied that she had ever used methamphetamine around Joezia. She stated that when she used drugs, she had left Joezia at home with her mother. However, she admitted that she had lied to her caseworkers, including Ernst, about her drug abuse.

Jacara testified that she learned she was pregnant with Joesive when she completed intake at the jail in September 2019. Jacara testified that at the time of the hearing, she was living at a

long-term residential treatment facility with family support, and that the program would potentially allow Joesive to be placed with her while she completed treatment.

Jacara next called Coral Frazell to testify. Frazell testified that she was the clinical director at Jacara's treatment program. She testified that the program lasted 6 months and allowed mothers and children to live together during treatment. Frazell testified that staff were present at the facility 24 hours a day and that the residents were drug tested at least weekly. She testified that because Jacara had been admitted to the program only a week before the hearing, it was too early to assess whether Jacara had made any progress.

On cross-examination, Frazell agreed that it is important to monitor parents who are in substance abuse treatment and for a period of time after their release from treatment. She testified that when a child's parent abuses substances such as methamphetamine, there is a potential for the child to develop cognitive issues, problems in school, and difficulties in handling emotions. Frazell testified that although children could potentially be placed with their mothers in Jacara's treatment facility, the availability of that option would depend upon the mother's individual progress. She testified that in Jacara's case, it might be several months before Joesive could be placed with Jacara.

Following Frazell's testimony, Jacara rested her presentation of evidence.

On May 28, 2020, the juvenile court entered an order adjudicating Joesive as a juvenile within the meaning of § 43-247(3)(a). The court found the that State had proven that the allegations in the petition were true by a preponderance of the evidence. Specifically, the court found that Jacara's parental rights to two older children had been terminated; that the conditions that had led to Joezia's removal and adjudication had yet to be corrected; that Jacara had a long history of substance abuse and that she had used methamphetamine while pregnant with Joesive; that Jacara was in need of residential substance abuse treatment; and that Joesive was at risk of harm as a result of Jacara's actions.

Jacara timely appealed the order of the juvenile court.

## ASSIGNMENTS OF ERROR

Jacara assigns, restated, that the juvenile court erred in finding sufficient evidence to adjudicate Joesive under § 43-247(3)(a).

## STANDARD OF REVIEW

An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings. *In re Interest of Giavonni P.*, 304 Neb. 580, 935 N.W.2d 631 (2019). When the evidence is in conflict, however, an appellate court may give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over the other. *In re Interest of Jordan B.*, 300 Neb. 355, 913 N.W.2d 477 (2018).

## ANALYSIS

Jacara assigns that the juvenile court erred in adjudicating Joesive under § 43-247(3)(a) because the State did not to prove by a preponderance of the evidence that Jacara had failed to provide proper parental care, support, and supervision, and that Joesive was at a risk for harm because of Jacara's actions.

Section 43-247(3)(a) provides that the juvenile court has jurisdiction of any juvenile who is abandoned by his or her parent, guardian, or custodian; who lacks proper parental care by reason of the fault or habits of his or her parent, guardian, or custodian; and whose parent, guardian, or custodian neglects or refuses to provide proper or necessary subsistence, education, or other care necessary for the health, morals, or well-being of such juvenile. To obtain jurisdiction over a juvenile at the adjudication stage, the court's only concern is whether the conditions in which the juvenile presently finds himself or herself fit within the asserted subsection of § 43-247. *In re Interest of Justine J. et al.*, 286 Neb. 250, 835 N.W.2d 674 (2013).

The purpose of the adjudication phase is to protect the interests of the child. *Id.* The Nebraska Juvenile Code does not require the separate juvenile court to wait until disaster has befallen a minor child before the court may acquire jurisdiction. *Id.* While the State need not prove that the child has actually suffered physical harm, Nebraska case law is clear that at a minimum, the State must establish that without intervention, there is a definite risk of future harm. *Id.* The State must prove such allegations by a preponderance of the evidence. *Id.* A preponderance of the evidence requires proof which leads the trier of fact to find that the existence of the contested fact is more probable than its nonexistence. *State v. Taylor*, 286 Neb. 966, 840 N.W.2d 526 (2013).

On appeal, Jacara does not dispute the testimony surrounding her history of substance abuse, nor the fact that her older children (including Joezia) were all adjudicated as the result of her conduct. Rather, Jacara argues that the State "has failed to prove that an evidentiary nexus between Jacara's conduct and a definite risk of harm to Joesive exists." Brief for appellant at 14. She argues that because the State's evidence of her substance abuse relates to her actions prior to the time she learned she was pregnant with Joesive, it is insufficient to show that he was at a risk of harm. She alleges that at the time of the adjudication hearing, she had been sober for nearly a year, was currently enrolled in residential treatment, and had never used controlled substances in Joesive's presence. Jacara further highlights "the fact that [she] is no longer incarcerated and is, as a result, able to care for Joesive." Brief for appellant at 18. We conclude that these arguments are not persuasive.

Evidence at the adjudication hearing showed that Jacara had long standing substance abuse problems which had led to the adjudication of Joezia as well as four older children. Jacara's parental rights to two of her children were terminated in 2014, and two other children had been placed with their biological fathers. Joezia was placed in the Department's custody in September 2019 and had not been returned to Jacara's care. The substance abuse evaluation conducted by Worley recommended that Jacara complete long-term residential treatment to address her addiction issues; at the time of the hearing, Jacara had only been enrolled in a residential treatment program for a week. Testimony from the program's director showed that although Joesive could potentially be placed with Jacara in the treatment facility, it would be several months before such a placement would be an option. Even if Jacara successfully completed long-term treatment, Jacara was still at risk of relapse, and the Department recommended continued monitoring to ensure her sobriety and Joesive's safety.

This court has held that "one's history as a parent is a permanent record and may serve as a basis for adjudication depending on the circumstances." *In re Interest of Andrew S.*, 14 Neb. App. 739, 749, 714 N.W.2d 762, 769-70 (2006). In *In re Interest of Andrew S., supra*, the parents voluntarily relinquished their parental rights to their two daughters in order to get a "clean slate"

with their unborn son. *Id*. at 748, 714 N.W.2d at 769. We rejected the concept of a "clean slate" and said that to ignore the fact that the parents chose to relinquish their rights as to their older children rather than correct the conditions that led to adjudication "would be folly on our part" and would unnecessarily expose the parents' son, who was born a mere 3 months later, to a risk of harm. *Id.* at 749, 714 N.W.2d at 770.

In this case, as in the case of *In re Interest of Andrew S.*, Jacara has not yet corrected the conditions that led to the adjudication of her five older children, i.e., her substance abuse. Prior to her incarceration, Jacara did not cooperate with the Department's case plan, and she lied to social workers about her drug use. Although Jacara had been sober for nearly a year prior to the adjudication hearing, this sobriety was the result of her incarceration, and it was too soon for there to be evidence showing that she could maintain sobriety while living in the community. At the time of the hearing, Jacara had only just begun residential treatment. Testimony showed that it would be at least several months before Jacara might be in a position to parent Joesive.

The evidence further showed that until Jacara's substance abuse issues were addressed and treated, Jacara's conduct placed Joesive at a definite risk for future harm. The State presented testimony showing that children whose parents abuse controlled substances may have cognitive issues, problems in school, and difficulties handling emotions. Parents who use methamphetamine may display impulsive and erratic behaviors which may place a child in danger. Parents may also be short tempered, and may sleep for long periods, during which time they cannot tend to the needs of a child. These risks are still present even if the parent does not abuse controlled substances in their child's presence.

Although there was no evidence showing that Jacara had abused controlled substances while Joesive was in her care, there was evidence that she had used methamphetamine both while Joezia was in her care and while she was pregnant with Joesive. A juvenile court need not wait for disaster to befall a minor child before taking action. See *In re Interest of Justine J. et al.*, 286 Neb. 250, 835 N.W.2d 674 (2013)*.* Here, the evidence showed that Jacara's actions deprived Joesive of proper parental care, support, and/or supervision, and that Jacara's actions posed a definite risk of future harm to Joesive.

Upon our de novo review, we find that the State met its burden in proving the allegations of the petition by a preponderance of the evidence.

CONCLUSION

For the reasons stated above, we find there was sufficient evidence to prove the allegations of the petition and to adjudicate Joesive pursuant to § 43-247(3)(a). The order of the juvenile court is affirmed.

AFFIRMED.