IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

IN RE INTEREST OF LISETTE M.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE INTEREST OF LISETTE M., A CHILD UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLEE,
V.
ANA M., APPELLANT.

Filed February 18, 2014.    No. A-13-475.

Appeal from the Separate Juvenile Court of Lancaster County: REGGIE L .RYDER, Judge.
Affirmed.

Jonathan Braaten, of Anderson, Creager & Wittstruck, P.C., L.L.O., for appellant.

Maureen Lamski, Deputy Lancaster County Attorney, and Amy Clemens, Senior
Certified Law Student, for appellee.

INBODY, Chief Judge, and PIRTLE and RIEDMANN, Judges.

RIEDMANN, Judge.

## INTRODUCTION

Ana M. appeals the order of the separate juvenile court of Lancaster County terminating
her parental rights to her minor child, Lisette M. Ana asserts the juvenile court erred in finding
clear and convincing evidence to support termination under Neb. Rev. Stat. § 43-292(2) and (4)
(Cum. Supp. 2012) and finding that termination was in Lisette's best interests. Based on our de
novo review of the record, we affirm.

## BACKGROUND

Ana is the biological mother of Lisette, born in September 2010. Ana has two other
minor children, who are currently placed with their respective fathers, and two adult children,
none of whom are subjects of this appeal.

- 1 -

The Department of Health and Human Services (DHHS) first made contact with Ana on October 3, 2011, after receiving a report that she was the primary caregiver for three minor children and was using methamphetamine. Ana admitted to DHHS that she had used cocaine the previous weekend and that she had used both cocaine and methamphetamine in the past. She voluntarily submitted to a drug test at that time, which revealed the presence of cocaine, amphetamines, and benzodiazepines. The children were removed from the home and placed in the temporary custody of DHHS.

The following day, the State filed a petition seeking to adjudicate the minor children under Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2008) because they lacked proper parental care by reason of the fault or habits of Ana. The petition alleged that Ana, while being the sole care provider for the children, tested positive for cocaine, amphetamines, and benzodiazepines on October 3, 2011; that Ana admitted to using cocaine the previous weekend and having a history of cocaine and methamphetamine use; and that such circumstances placed the children at risk of harm. An adjudication hearing was held, during which Ana pled no contest to the allegations in the amended petition. The court accepted her plea and found the allegations to be true.

After the children were removed, Ana began attending counseling and took it upon herself to obtain a substance abuse evaluation. She maintained appropriate housing, participated in supervised visits with Lisette three to four times per week, complied with required drug testing two to three times per week, attended school, and was seeking part-time employment. The visitation workers reported that Ana was patient, loving, attentive, and engaging with the children during visits.

On November 16, 2011, Ana began an intensive outpatient drug and alcohol treatment program. She had attendance issues, mostly due to lack of transportation, and did not consistently complete homework assignments or attend 12-step meetings as required. Additionally, from November 22 to December 22, there was "a real lapse" in Ana's drug testing, allegedly due to transportation issues and scheduling conflicts with her schooling and treatment. Beginning in early December, Ana was granted monitored parenting time with Lisette.

Due to Ana's inconsistency in testing, the case manager went to Ana's residence on December 23, 2011, to conduct a drug test, at which point Ana tested positive for methamphetamine. Although she had been scheduled to graduate from the treatment program on December 28, her completion date was postponed after this relapse. It is unclear whether Ana ever completed this treatment program. Ana's drug testing continued to be sporadic, and she had another positive drug test on January 20, 2012. At that point, the court revoked its prior order allowing monitored visitation and ordered parenting time on a supervised basis only. Nonetheless, according to Ana's case manager, Ana always voiced her commitment to staying sober and completing treatment.

Ana took a relapse prevention course and was able to reenter the intensive outpatient treatment program on March 21, 2012. Her counselors reported good participation and progress in treatment, and she graduated from the program on May 2. During that same timeframe, Ana completed a parenting course, had regular visits with Lisette, and participated in family counseling and aftercare services. The visitation notes show that Ana was attentive during visits, engaged in age-appropriate activities, and met the children's needs.

In June 2012, Ana was charged with possession of methamphetamine. She was not complying with drug testing at this time, missing approximately 75 percent of her required drug tests. However, there was some indication that she had been working out-of-town, which affected her ability to complete drug testing on a regular basis. Ana underwent another substance abuse evaluation in August, which recommended that she seek short term residential treatment.

Ana was accepted for residential treatment on September 7, 2012, but was not admitted due to a conflict of interest with a staff member. Ana was placed on a waiting list of another residential treatment center and, in the meantime, began intensive outpatient treatment through a different program on October 22. Although she was fully participating and making progress with this treatment, it ended on January 3, 2013, because Ana's counselor felt that she required a higher level of treatment.

On December 27, 2012, Ana refused to submit to drug testing and indicated that she was no longer going to attend treatment because she had done everything that was asked of her and yet still did not have custody of Lisette. It was made clear to Ana that she would not be allowed to have visitation with Lisette until she submitted to drug testing, but she still refused. Ana was very upset and emotional at that meeting, but called her case manager the following day to request continued services with DHHS. However, she did not submit to a drug test for over a month after that and did not request visitation with Lisette for approximately 1½ months.

On January 15, 2013, the State filed a motion to terminate Ana's parental rights based on Lisette's best interests and the following statutory grounds for termination: (1) Ana has substantially and continuously or repeatedly neglected and refused to provide Lisette necessary parental care and protection; (2) Ana is unfit by reason of debauchery, habitual use of intoxicating liquor or narcotic drugs, or repeated lewd and lascivious behavior, which is seriously detrimental to the health, morals, or well-being of Lisette; (3) Lisette has previously been determined to be a child as described in § 43-247(3)(a) and active efforts have failed to correct the conditions leading to that determination; and (4) Lisette has been in an out-of-home placement for 15 or more months of the most recent 22 months. Ana actively continued seeking treatment, despite the initiation of these termination proceedings.

Ana entered short-term residential treatment in February 2013, but was administratively discharged in less than 2 weeks for noncompliance. She left treatment against the recommendation of the clinical team to take care of personal matters with her adult son and her home. She returned to treatment the following day and was placed on a restrictive status, which she successfully completed. On another occasion, Ana left a group outing without permission from staff and walked back to the treatment facility unsupervised. She was asked, as a requirement to remain in treatment, to complete a written assignment examining her disruptive behaviors. Ana wrote her thoughts and concerns about treatment in general, but refused to answer the questions posed on the assignment. She was administratively discharged from treatment for noncompliance with the assignment.

Ana had another positive drug test on March 15, 2013. She entered a detoxification program on March 25 and began residential treatment on April 1. Ana's counselor indicated that Ana was very engaged and had gained a lot of insight and knowledge of addiction and recovery concepts. At the time of trial, it appeared that Ana was in the contemplation stage of change, meaning that she was willing to accept her addiction and work on it, but she was moving into the

preparation stage of change, which involves putting plans in place for continued sobriety. According to Ana's counselor, the fact that Ana has been unsuccessful in past treatment attempts does not mean that she will not be successful with this treatment, particularly once she has moved into the preparation stage of change. Ana's counselor explained that Ana will have a solid plan in place prior to her discharge from the residential treatment program, which plan, if followed, will greatly improve her chances of success. At the time of trial, Ana was scheduled to graduate from the program on April 29 and then transition into a three-quarter-way house for approximately 3 months while attending intensive outpatient treatment and a relapse prevention group.

Ana testified that her current treatment has taught her the severity of her disease and the coping skills she needs to overcome it. According to Ana, she now realizes the effect of her addiction on her ability to parent and knows that she will not be able to parent her children properly without treatment. Ana testified that her current treatment is different than her prior attempts at treatment due to her willingness to change. She stated that she has a sponsor and has made plans for aftercare in accordance with her counselor's recommendations. Ana has been in contact with a mother-child treatment program, and the organization has agreed to accept her into the program if she obtains custody of Lisette. Despite the 18 months that elapsed between the date Lisette was removed from her care and the date of trial, Ana believes that she should be given more time to reunify with Lisette. According to Ana, she has come to terms with her addiction, has seen the devastation it has caused in her life, and wants this opportunity to prove that she can conquer her addiction.

Ana's case manager testified that Ana has attempted multiple treatment programs and has not made any progress in overcoming her addiction. She believes it is in Lisette's best interests to have permanency through adoption by her foster parents, with whom she had been placed since December 2011. Lisette's case managers conducted visits at the foster parents' home, and observed that Lisette got along very well with her foster parents and the other children in the home. The foster parents have indicated a willingness to adopt Lisette and to facilitate future contact between Lisette and her siblings.

According to the case managers and visitation workers, Ana had healthy, positive interactions with Lisette during all of her visits, and there was a strong bond between them despite some lapses of time between visits. One visitation worker testified that Ana was very caring, loving, and attentive to the children, and that Lisette was very receptive to Ana's affection. Lisette would often yell "mommy" for the entire car ride after leaving visits with Ana. Most of the visits occurred in Ana's home, which was always very clean with everything in order. Ana provided healthy, nutritious meals or snacks for the children during every visit. Ana's ex-husband and the custodial father of their minor son testified that Ana is a loving mother, that he has never had any concerns regarding Ana's parenting, and that he encourages contact between Ana and their son.

Based on the evidence presented, the juvenile court found that the State had demonstrated clear and convincing evidence of the statutory grounds for termination under subsections (2), (4), and (7) of § 43-292 and that termination of Ana's parental rights was in Lisette's best interests. Ana timely appeals.

ASSIGNMENTS OF ERROR

Ana asserts that the juvenile court erred in finding clear and convincing evidence that statutory grounds for termination existed under § 43-292(2) and (4) and that termination of her parental rights was in Lisette's best interests. Ana also argues that the State failed to prove that failure to terminate her parental rights would subject Lisette to future harm.

STANDARD OF REVIEW

Juvenile cases are reviewed de novo on the record, and an appellate court is required to reach a conclusion independent of the juvenile court's findings. However, when the evidence is in conflict, an appellate court may consider and give weight to the fact that the trial court observed the witnesses and accepted one version of the facts over the other. *In re Interest of Karlie D.*, 283 Neb. 581, 811 N.W.2d 214 (2012).

ANALYSIS

The bases for termination of parental rights are codified in § 43-292. *In re Interest of Sir Messiah T. et al.*, 279 Neb. 900, 782 N.W.2d 320 (2010). Section 43-292 provides 11 separate conditions, any one of which can serve as the basis for the termination of parental rights when coupled with evidence that termination is in the best interests of the child. *Id.*

Here, the juvenile court found that the State had proved three of the conditions set forth in § 43-292, namely subsections (2), (4), and (7). On appeal, Ana does not challenge the court's findings under subsection (7) that Lisette had been in an out-of-home placement for 15 or more months of the most recent 22 months. She therefore concedes this condition, and we affirm the juvenile court's finding that the State proved by clear and convincing evidence the grounds for termination under subsection (7).

If an appellate court determines that the lower court correctly found that termination of parental rights is appropriate under one of the statutory grounds set forth in § 43-292, the appellate court need not further address the sufficiency of the evidence to support termination under any other statutory ground. *In re Interest of Justin H. et al.*, 18 Neb. App. 718, 791 N.W.2d 765 (2010). Therefore, we need not address the juvenile court's findings under § 43-292(2) or (4).

*Best Interests.*

Ana argues that the juvenile court erred in finding that terminating her parental rights was in Lisette's best interests. Section 43-292 provides that parental rights can be terminated only when the court finds that termination is in the child's best interests. A juvenile's best interests are a primary consideration in determining whether parental rights should be terminated. *In re Interest of Sir Messiah T. et al., supra.* In deciding best interests, the court is obligated to review the evidence presented by all parties relative to the parent's current circumstances and determine if termination of parental rights is in the best interests of the minor child based on those circumstances. *Id.*

Here, the evidence demonstrates that Ana is either unwilling or unable to forgo her drug addiction despite several opportunities to obtain treatment. Ana tested positive for methamphetamine on at least three occasions, and she admitted to using methamphetamine on

several additional occasions during the pendency of this case. She successfully completed only one of the four treatment programs she entered, and she was arrested and charged with possession of methamphetamine in the month following her completion of that program. Ana failed to comply with the majority of the court-ordered drug testing throughout the case and, as a result, missed a significant number of visits with Lisette. Ana had only two visits with Lisette during the first 3 months of 2013, and she tested positive for methamphetamine as recently as 2 weeks prior to trial. When a parent is either unwilling or unable to forgo their drug addiction, the parent should not be afforded yet another opportunity for rehabilitation. See *In re Interest of Joshua M. et al.*, 256 Neb. 596, 591 N.W.2d 557 (1999).

Several witnesses testified at trial regarding the impact of methamphetamine on an individual's parenting abilities, as well as the risks that children are exposed to when a parent is under the influence of methamphetamine. Parents that are under the influence of methamphetamine are irritable, spend less time with their children, and often make bad decisions regarding the care of their children. Those children may be at further risk due to exposure to drugs and drug users coming in and out of the home.

Lisette was removed from Ana's care shortly after her first birthday, and she has spent over half of her life in the care of her foster parents, where she has done well. The case manager testified that it was in Lisette's best interests to be adopted by the foster family and that returning her to Ana's care would be contrary to her health, safety, and welfare.

The best interests of the child require termination of parental rights where a parent is unable or unwilling to rehabilitate themselves within a reasonable time. *In re Interest of Emerald C. et al.*, 19 Neb. App. 608, 810 N.W.2d 750 (2012). Children cannot, and should not, be suspended in foster care or be made to await uncertain parental maturity. *Id.*

Upon our de novo review of the record, we agree with the juvenile court's determination that termination of Ana's parental rights is in Lisette's best interests.

*Failure to Prove Future Harm.*

Ana asserts that the State failed to prove by clear and convincing evidence that failure to terminate her parental rights would subject Lisette to future harm. In support of this argument, Ana cites to *In re Interest of Carrdale H.*, 18 Neb. App. 350, 352, 781 N.W.2d 622, 624 (2010), which states: "Generally, the State need not prove that the juvenile has actually suffered harm but must establish that without intervention, there is a definite risk of future harm." Ana argues that because there has been no showing of a definite risk of future harm, her parental rights must remain intact. We disagree.

Ana's reliance on *In re Interest of Carrdale H.* is mistaken, because that case addresses the necessary requirements to adjudicate a juvenile under § 43-247(3)(a) and does not address the requirements for termination of parental rights. Ana pled no contest to the allegation that Lisette was a child under § 43-247(3)(a) and she does not assign as error the trial court's finding as to this allegation. Since the definite risk of future harm requirement applies to adjudicating a child under § 43-247(3)(a) and does not apply to § 43-292(7) or the best interests analysis, this assigned error is without merit.

## CONCLUSION

The juvenile court did not err in terminating Ana's parental rights to her minor child Lisette.

AFFIRMED.