IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


IN RE INTEREST OF DANTE S.


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


IN RE INTEREST OF DANTE S., A CHILD UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLEE,

V.

LORI S., APPELLANT.


Filed October 3, 2017.    No. A-16-1129.


Appeal from the Separate Juvenile Court of Lancaster County: REGGIE L. RYDER, Judge. Affirmed.

Candice C. Wooster, Brennan & Nielsen Law Offices, P.C., for appellant.

Joe Kelly, Lancaster County Attorney, Shellie D. Sabata, and Margaret Jackson, Senior Certified Law Student, for appellee.


INBODY, PIRTLE, and RIEDMANN, Judges.

PIRTLE, Judge.

### INTRODUCTION

Lori S. appeals the order of the separate juvenile court of Lancaster County which terminated her parental rights to the minor child, Dante S. The juvenile court found that grounds for termination existed under Neb. Rev. Stat. § 43-292(2), (3), (7), and (9) (Reissue 2016), and that the State proved, by clear and convincing evidence, that termination of Lori's parental rights was in the child's best interests. For the reasons that follow, we affirm.

- 1 -

BACKGROUND

On March 12, 2008, Lori was found guilty of use of a child in a sexual performance, a Class C felony, in the Circuit Court of Grundy County, Missouri. As a result of her conviction, she was placed on the National Sex Offender Registry and voluntarily relinquished her parental rights to the two children she had at that time. Since that incident and prior to Dante's birth, Lori has given birth to two other children. She has lost custody of both of these children, which includes having her parental rights to one of those children involuntarily terminated by the Juvenile Court for Jasper County, Missouri in August 2013. Lori had also been arrested for failure to comply with the sex offender registry in Nebraska.

Lori gave birth to Dante in June 2014. The day after Dante was born he was removed from Lori's care and custody. He was placed in a foster home when he was 2 days old and he resided in the foster home for the entirety of this case.

On June 30, 2014, the State filed a petition to adjudicate Dante, alleging that he lacked proper parental care due to the fault or habits of Lori. The State also filed a motion for ex parte temporary legal and physical custody, which the juvenile court granted, thereby giving the Nebraska Department of Health and Human Services temporary custody and placement of Dante. A temporary custody hearing followed, at which time the juvenile court ordered that temporary legal and physical custody of Dante would remain with the Department.

On April 27, 2015, after a hearing on the petition to adjudicate, the court found that Dante was a juvenile as defined by Neb. Rev. Stat. § 43-247(3)(a) (Supp. 2015). The court found that Lori had not demonstrated an ability to maintain a safe, consistent, and stable home environment for Dante. The court cited her participation in criminal behavior, her pending criminal warrant and/or criminal court case, and her lack of housing or the financial means to provide for Dante's necessities. The court entered a nunc pro tunc order on May 8, to correct an error in the statement of facts as set forth in the original order.

In June 2015, a disposition hearing was held. Following the hearing, the juvenile court entered an order finding that based on Neb. Rev. Stat. § 43-283.01 (Reissue 2016), reasonable efforts to preserve and reunify Dante with Lori were not required because Lori has had her parental rights to a sibling of Dante's involuntarily terminated. Lori appealed and this court affirmed the decision of the juvenile court on January 5, 2016. *In re Interest of Dante S.*, No. A-15-607, 2016 WL 48092 (Neb. App. Jan. 5, 2016) (selected for posting to court website). Lori filed a petition for further review which was denied by the Nebraska Supreme Court on March 16, 2016.

On May 25, 2016, the State filed a motion for termination of Lori's parental rights. The petition alleged that grounds for termination existed pursuant to § 43-292(2), (3), (7), and (9), and that termination was in Dante's best interests. A formal hearing on the State's motion was held on October 24, 25, and 27, and November 3, 2016. The court entered an order terminating Lori's parental rights on November 7, 2016. The court found that the State proved, by clear and convincing evidence that there were grounds for termination of Lori's parental rights under § 43-292(2), (3), (7), and (9); that Lori was an unfit parent; and that termination of her parental rights was in Dante's best interests. Lori timely appealed.

FACTUAL BACKGROUND

A psychological evaluation of Lori was conducted on October 28 and November 13, 2014. Dr. John Herdman, a licensed psychologist, conducted the evaluation and diagnosed Lori with Bipolar II Disorder and Narcissistic Personality Disorder. The recommended treatment plan for Bipolar II Disorder is a combination of psychotherapy and medication management. For Lori, specifically, he noted a need for a medication assessment and possible medication as well as individual mental health counseling. It was his opinion that reunification was not in Dante's best interests. Herdman opined that given Lori's mental health diagnosis, her history of being a sexual abuse perpetrator, and her continued display of making poor decisions, a parenting assessment was unnecessary and Lori "is not capable of providing a safe environment for her infant child." The doctor opined that "No interventions in the near future can remediate her deficits in adaptive functioning."

In the fall of 2014, Lori paid for and successfully completed an 8-week parenting class through Family Services. A family support worker, Cheryl Cooke, testified that Lori met Dante's basic needs during visits, she was very attentive, and she was building a bond with him. Lori was consistent in attending her parenting time during Dante's first year. She testified that she had visits five days per week for 2 to 3 hours apiece. She provided necessities for Dante and was working full-time at McDonalds.

Herdman conducted a parenting assessment on January 7, 14, and 22 of 2015. He observed Dante and Lori together and noted that Dante was well-bonded with Lori. He recommended that Lori take additional steps to participate in mental health counseling and a psychiatric evaluation or possible medication. He concluded that Lori could possibly reunify, should she continue to display good decision making and take the necessary steps to provide a safe environment for Dante.

Lori completed ten weekly therapy sessions with Cynthia Trainor in February, March, and April, 2015. Trainor opined that Lori appeared to be "willing to take increased responsibility for adult decisions."

After therapy concluded, Lori was fired from a full-time job at a local grocery story. She was charged and convicted for stealing money from her employer. Stefani Drew testified that she was the caseworker for Lori and Dante from October 2014 to July 2016. Drew was concerned because Lori did not maintain consistent employment. Since Dante's birth, Lori worked for varying lengths of time at approximately six different restaurants or stores in and around Lincoln, Nemaha, and Nebraska City.

Drew stated that she did not have concerns with Lori's ability to parent Dante, but said there were ongoing safety concerns with Lori's living environment, including issues with cockroaches, bed bugs, and smoke. On one occasion, Drew walked into Lori's apartment and found it to be so smoky, she had to turn and walk out. Drew was concerned for Dante's well-being, and visits could not occur in Lori's home.

After the hearing on June 17, 2015, the court found that reasonable efforts by DHHS were no longer required due to Lori's 2007 conviction, and the involuntary termination of her parental rights to Dante's siblings. Lori was allowed to continue fully supervised visitation but she was required to pay for supervision and transportation to be provided by one of the companies approved

and employed by DHHS. Lori arranged three supervised visits with Dante; one in February 2016, and two in September 2016. The final visit ended early because Dante had a "melt down."

In September 2015, Lori saw Lorrene Jurgens, an advanced practice registered nurse four or five times, and Jurgens treated Lori's Bipolar II Disorder with medication. Jurgens reported that Lori was taking prescribed medication at the time of her first visit, and she has continued to take prescribed medication through their most recent visit in September 2016. Jurgens testified that one medication is a mood stabilizer, prescribed to manage Lori's bipolar disorder, and the other is a medication to help Lori sleep.

At the time of trial, Lori was married to Joseph S., but was in a relationship with James S., Dante's biological father. James resides in Tennessee, and Lori moved there in July 2016. She stated her plan to marry James, after they both divorce their respective spouses. James has never met Dante, and has had an active warrant for his arrest in Nebraska since 2009.

DHHS has not recommended placement of Dante with James because he has ongoing charges for sexual assault in Tennessee and he is on the central sex offender registry in Tennessee. He was arrested and charged in 2013 for transporting a minor across state lines and committing a crime that was sexual in nature. At the time of trial, there was a pending supplemental petition and motion for termination of James' parental rights to Dante.

Lori did not provide notice to the DHHS when she moved to Tennessee to live with James. The child and family specialist working with her became aware of the move when Lori changed her address on the National Sex Offender Registry.

Lori testified that she has not had the funds to maintain regular visitation with Dante. Her expenses in Nebraska included a monthly bus pass, rent, her phone bill, food and clothes, and items for Dante. At the June 17, 2015 hearing, she testified that she had approximately $400 in her bank accounts, $112 of which she had set aside for visitation. At trial, she testified that she used the money to go to Tennessee and to buy a bed and other essentials for the apartment she shared with James. She testified that she purchased a car in March 2016 for $1,000 using her tax return. She was required to pay for additional expenses, including licenses, taxes, and insurance.

As Lori lives in Tennessee, she incurs approximately $120 in gas expenses for each round trip from Tennessee to Nebraska. She testified that she has been responsible for a pet dog since November 2015 and she and James have a pet cat. She has paid for expenses related to the care and maintenance of the animals, and also smokes cigarettes. Her other expenses at the time of trial included a cell phone bill, rent, car insurance and gas, medication, food and a bus pass.

Lori testified that she continued to pay for clothing and shoes for Dante, throughout this case, and she paid for food, diapers, and other necessities during visits. The foster family testified that the only items they received from Lori were a pair of tennis shoes, given when Dante was an infant, and a pair of Elmo slippers. The foster family received cards from Lori to share with Dante on his first and second birthday, but they did not receive any other letters, cards, basic care items, or gifts for him. Lori has not requested to use any other form of communication to maintain contact with Dante.

Darci Warner, a child and family service specialist for DHHS, testified that she was assigned as the caseworker for Dante in January 2016. She testified that children thrive where there is stability, and where they feel bonded and safe. Warner described Dante as a very energetic, thriving, little boy who shares a bond with his foster parents and foster sisters. She testified that it

was in Dante's best interests to be raised in a home that is free from criminal activity and where his medical and developmental needs can be met.

She testified that, in her opinion, Lori was not able to meet Dante's needs and would not be able to in the near future. Warner testified that Lori expressed to her that she does not believe her criminal convictions affect her ability to parent Dante, and that reasonable efforts should have been continually provided by the State. Warner expressed concerns regarding Dante's safety if returned to Lori's care, because both she and James are required to register on the National Sex Offender registry and that Lori has not spent enough time parenting Dante to understand and meet his needs.

## ASSIGNMENTS OF ERROR

Lori asserts the court erred in finding the State proved, by clear and convincing evidence, that there were grounds for termination of her parental rights under § 43-292(2), (3), and (9), and that termination of her parental rights was in Dante's best interests.

## STANDARD OF REVIEW

An appellate court reviews juvenile cases de novo on the record and reaches a conclusion independently of the juvenile court's findings. *In re Interest of Alec S.*, 294 Neb. 784, 884 N.W.2d 701 (2016).

## ANALYSIS

*Grounds for Termination.*

The bases for termination of parental rights in Nebraska are codified in § 43-292. Section 43-292 provides 11 separate conditions, any of which can serve as the basis for termination of parental rights when coupled with evidence that termination is in the best interests of the child. *In re Interest of Sir Messiah T. et al.*, 279 Neb. 900, 782 N.W.2d 320 (2010).

In its order terminating Lori's parental rights to Dante, the juvenile court found that the State proved by clear and convincing evidence that: (1) Lori substantially and continuously or repeatedly neglected and refused to give Dante, as well as a sibling, necessary parental care and protection (§ 43-292(2)); (2) Lori neglected to provide Dante with the necessary subsistence, education, or other care necessary for his health, morals or welfare (§ 43-292(3)); (3) Lori has subjected another minor child to aggravating circumstances, including sexual abuse (§ 43-292(9)); and, (4) Dante has been in an out-of-home placement for 15 or more of the most recent 22 months (§ 43-292(7)).

Lori does not contest the juvenile court's finding that grounds for terminating her parental rights existed under subsection (7) of § 43-292; she asserts only that the State failed to prove by clear and convincing evidence that grounds for termination existed under subsections (2), (3), and (9).

If an appellate court determines that the lower court correctly found that termination of parental rights is appropriate under one of the statutory grounds set forth in § 43-292, the appellate court need not further address the sufficiency of the evidence to support termination under any other statutory ground. *In re Interest of Giavonna G.*, 23 Neb. App. 853, 876 N.W.2d 422 (2016).

Dante was removed from Lori's care in June 2014. He was placed in foster care and was not returned to Lori's care at any time prior to the filing of the State's motion for termination of her parental rights on May 25, 2016. Our review of the record clearly and convincingly shows that the child has been in out-of-home placement for at least 15 of the most recent 22 months and that grounds for termination of Lori's rights under § 43-292(7) were proved by sufficient evidence. Therefore this court need not review the court's findings that grounds for termination existed under § 43-292(2), (3), or (9). Once a statutory basis for termination has been proved, the next inquiry is whether termination is in the child's best interests.

*Best Interests*.

The juvenile court found the State established by clear and convincing evidence that termination of Lori's parental rights was in the child's best interests. Lori asserts the juvenile court erred in reaching this conclusion.

A child's best interests are presumed to be served by having a relationship with his or her parent. This presumption is overcome only when the State has proved that the parent is unfit. *In re Interest of Alec S., supra.* In the context of the constitutionally protected relationship between a parent and a child, parental unfitness means a personal deficiency or incapacity which has prevented, or will probably prevent, performance of a reasonable parental obligation in child rearing and which has caused, or probably will result in, detriment to a child's well-being. *Id.* The best interests analysis and the parental fitness analysis are separate inquiries, but each examines the same underlying facts as the other. *Id*.

Lori argues that she and Dante enjoyed months of positive visits with no safety concerns, and that when she was given financial assistance from DHHS "she was able to comply with all services requested of her and move toward rehabilitation." Brief for appellant at 27. She implies that the main barrier to reunification was the decision that reasonable efforts were no longer required, and argues that reasonable efforts should be reinstated. Brief for appellant at 30.

This court has already addressed Lori's appeal of the juvenile court's decision to withdraw reasonable efforts to preserve and reunify Lori with Dante, and that decision is not at issue in this appeal. See *In re Interest of Dante S., supra.*

We recognize that Lori completed a course for sexual offenders while incarcerated and her testimony that she applies the mediation and breathing skills that she learned when she is feeling stressed. We also recognize that she completed a parenting class, participated in a 10-week session of mental health therapy, and takes medication to manage her mental health diagnoses. However, her personal decisions to engage in criminal activity and her decisions with regard to her employment, financial priorities, and personal relationships have not demonstrated that she can be a stable, responsible parent to Dante in the long term.

The record indicates that she shared a bond with Dante when they shared regular parenting time from birth to June 2015, but there is little in the record to indicate that the bond continued to the time of trial. Since June 2015, Lori has spent approximately 5½ hours with Dante. She urges this court to consider that after reasonable efforts were discontinued, she was unable to pay the transportation and supervision costs associated with each visit, which caused a substantial gap in time between visits.

Lori has expressed her desire to see and spend time with Dante, and that she was saving to pay for visits. Nonetheless, she testified that she used the money she saved to move several states away from Dante, and for expenses related to moving into an apartment with James S. Lori testified that she would move back to Nebraska if there was a possibility that Dante would "come home." She testified that her financial status was a major barrier to her ability to set up visits, but the evidence shows the decision to move to Tennessee meant she would incur travel expenses each time she made the trip to see him in Nebraska. She also used available funds to buy, license, and insure a car, acquire and care for pets, and to purchase cigarettes.

Lori testified that she was in a relationship with James, and that she intended to marry him. James is Dante's biological father, but we cannot overlook the fact that James has never met Dante, and there was a pending motion for termination of his parental rights at the time of trial. Further, James and Lori both are required to register as sex offenders due to criminal actions involving minor children. These facts would surely be potential barriers to reunification had Lori's parental rights not been terminated.

Lori has not taken responsibility for the actions which led to her criminal convictions, or her failure to maintain consistent contact and parenting time with Dante since June 2015. She has not demonstrated the ability or willingness to put Dante's needs before her own.

Warner testified that, in her opinion, Lori was unable to provide a safe and stable home environment for Dante. Lori has a history of instability in her employment and she struggles with financial management. Warner testified that Lori was unable to meet Dante's needs at the time of trial and would not be able to in the near future. Warner testified that she believed it was not in Dante's best interests to continue in foster care to see if any changes were made with regard to Lori's plans or rehabilitation efforts. She stated that Dante is 2 years old and he has been in an out-of-home since birth, and it is time for him to enjoy "some permanency."

Lori asserts that the bond Dante shares with his foster family is the underlying reason for termination of her parental rights. See brief for appellant at 26. Upon our review, the facts of this case do not support this assertion. This case has been ongoing since Dante's birth in June 2014 and much progress must be made before Lori would be trusted with the care and custody of Dante. He would be left to languish in foster care for an unknown amount of time with no guarantee of reunification. Children cannot, and should not, be suspended in foster or be made to await uncertain parental maturity. *In re Interest of Alec S., supra.* We conclude that the juvenile court did not err in determining that Lori was unfit and finding that the State showed by clear and convincing evidence that termination of Lori's parental rights was in Dante's best interests.

## CONCLUSION

Upon our de novo review of the record, we conclude that the State proved, by clear and convincing evidence, that one or more of the statutory grounds for termination existed and that termination of Lori's parental rights was in the child's best interests. We affirm the decision of the separate juvenile court of Lancaster County.

AFFIRMED.